# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

HUNG NAM TRAN,

     Petitioner,

     v.                        **Case No. 12-CV-525**

DEBORAH McCULLOCH,
Director, Sand Ridge Secure Treatment Center,

     Respondent.

---

### DECISION AND ORDER DENYING PETITION FOR WRIT
### OF HABEAS CORPUS AND DISMISSING CASE

---

The petitioner, Hung Nam Tran ("Tran"), is currently committed to Sand Ridge Treatment Center pursuant to Chapter 980 of the Wisconsin Statutes as a "sexually violent person." Tran seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tran alleges that his custody is unlawful on multiple grounds.

The respondent answered the petition and the parties subsequently briefed the petition for a writ of habeas corpus. The petition is ready for resolution. For the reasons stated in this opinion, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Tran was convicted in 1992 of first degree sexual assault of a child. (Answer, Ex. H at 2, Docket # 8-9.) In November 2004, as Tran approached the end of his prison term, the State of Wisconsin petitioned to commit him as a sexually violent person under Wis. Stat. § 980.02. (*Id.*) Tran represented himself at the May 2007 commitment trial. (*Id.*) The jury found Tran met the criteria for

commitment as a sexually violent person and the court committed Tran to the custody of the Department of Health and Family Services, who committed him to institutional care. (*Id.*)

Tran filed a *pro se* notice of appeal from the order of commitment. (*Id.*) Tran's case was remanded to the trial court for post commitment proceedings. (*Id.*) In August 2008, Tran filed a *pro se* petition for discharge from commitment. (*Id.*) The trial court denied it without a hearing and Tran appealed. (*Id.* at 2-3.) In April 2009, Tran filed a motion in the trial court for post commitment relief. (*Id.* at 3.) The court denied the motion and Tran appealed from that order. (*Id.*) The Wisconsin Court of Appeals ultimately consolidated Tran's three appeals. (*Id.*) The court of appeals affirmed Tran's commitment order, the order denying his post commitment motion, and the order denying his discharge petition. (*Id.* at 1-21.) Tran filed a petition for review in the Wisconsin Supreme Court. (Answer, Ex. I, Docket # 8-10.) The supreme court denied the petition on September 1, 2011. (Answer, Ex. J, Docket # 8-11.) Tran filed the instant petition for writ of habeas corpus on May 24, 2012. (Docket # 1.)[1]

## STANDARD OF REVIEW

Tran's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376 (2000). In reviewing the merits of

---

[1] Tran has also filed a motion to supplement the record with the entire case file transcript of all proceedings in the trial court including exhibits from the commitment proceedings in State court, the criminal case file for his underlying criminal conviction, and the records from a revocation proceeding. (Docket # 9.) The Court finds these additional records unnecessary to render its decision in this case and thus denies Tran's motion.

- 2 -

a petition for habeas relief, "[t]he relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (*citing McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). In this case, it is the decision of the Wisconsin Court of Appeals that is at issue.

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

## ANALYSIS

In his petition, Tran challenges his commitment as a sexually violent person on a plethora of grounds. I will address each argument in turn, grouping together arguments where logically appropriate.

### 1.    *Standard of Review for Equal Protection Claims*

Tran argues that the state court incorrectly analyzed his equal protection claims under the "rational basis" test rather than the "strict scrutiny" test. The respondent counters that Tran procedurally defaulted this claim. (Resp. Br. at 4, Docket # 13.) Tran responded that he did not procedurally default his claim that the Wisconsin courts lacked jurisdiction over him. (Petitioner's Br. at 4, Docket # 10.) Tran misunderstands the respondent's argument as the respondent has not claimed Tran procedurally defaulted the jurisdictional claim, only the standard of review claim.

- 3 -

A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Also, the petitioner must invoke one complete round of the normal appellate process, including seeking discretionary review before the state supreme court. *McAtee v. Cowan*, 250 F.3d 506, 508-09 (7th Cir. 2001). In dealing with this issue, courts "have sought to avoid hypertechnicality and to enforce the Supreme Court's mandate in light of its purpose - to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue." *Verdin*, 972 F.2d at 1474. A petitioner need not cite "book and verse of the federal constitution" to present a constitutional claim. *Id.* (internal citation and quotations omitted). Further, a habeas petitioner may reformulate somewhat the claims made in state court; exhaustion requires only that the substance of the federal claim be fairly presented. *Id.*

To determine whether a constitutional issue has been fairly presented, the court considers four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; 3)

- 4 -

whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Ward v. Jenkins*, 613 F.3d 692, 696-97 (7th Cir. 2010). In determining whether a claim has been fairly presented, a court must liberally construe *pro se* petitions. *Id.* at 697.

Here, I find that Tran properly presented this argument to both the Wisconsin Court of Appeals and in his petition for review to the Wisconsin Supreme Court. (Answer, Ex. B at 10, Docket # 8-3; Ex. I at 8, Docket # 8-10.) In his brief before the court of appeals, Tran argues that "[t]he rational basis test is an inappropriate application in the context of equal protection and procedural due process to Chapter 980 since its only address [sic] the nature of State interest and failed to address the legitimate or justifiable reason for the type of distinctive classification when dealing with legislation with [sic] restricts the fundamental right of a suspect class." (Ex. B at 10.)

In his petition for review, Tran argues that the court of appeals applied a "rational basis" test rather than the "strict scrutiny" analysis and that the court "applied the wrong standard and this Court needs to resolve this point." (Ex. I at 8.) In support of this argument, Tran cites to *Addington v. Texas*, 441 U.S. 418 (1979), and *Foucha v. Louisiana*, 504 U.S. 71 (1992). (Ex. B at 9-10; Ex. I at 7.) In rendering its decision, the court of appeals found that in determining the constitutionality of a statute, the court would presume that all legislative enactments are constitutional and resolve doubts in favor of the statute's constitutionality, thus applying a rational basis test. (Answer, Ex. H at 5.)

Thus, while Tran did not provide a highly detailed presentation of his federal issue, liberally construed, his claim adequately calls to mind the specific issue of the proper standard of review in analyzing equal protection claims. Accordingly, Tran has not procedurally defaulted this claim.

- 5 -

Even so, Tran's claim fails on the merits. To obtain habeas relief, Tran must show that the court of appeals' use of the rational basis test in examining the constitutionality of Chapter 980 was either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Tran has failed to do so.

The Supreme Court has not expressly identified the proper level of scrutiny to apply when reviewing constitutional challenges to civil commitment statutes. *See United States v. Timms*, 664 F.3d 436, 445 (4th Cir. 2012). Tran principally relies on *Foucha*, in which the Supreme Court states in its plurality opinion that "[f]reedom from physical restraint being a fundamental right, the State must have a particularly convincing reason, which it has not put forward, for such discrimination against insanity acquittees who are no longer mentally ill." 504 U.S. at 86. Although Justice White cites this in the context of an equal protection analysis, the Court does not explicitly state that it is applying a strict scrutiny test in addressing equal protection claims. Also, in addressing other equal protection claims in the context of civil commitment statutes, the Supreme Court has implied that it would utilize a rational basis test. *See, e.g., Baxstrom v. Herold*, 383 U.S. 107, 115 (1966) (stating that there was no "semblance of rationality" as to a civil commitment statute's distinctions).

Further, several other circuits have acknowledged that the Supreme Court has never expressly stated what level of scrutiny it uses in addressing the constitutionality of civil commitment statutes and thus has used various levels of scrutiny. *See Timms*, 664 F.3d at 446 (applying rational basis test); *United States v. Carta*, 592 F.3d 34, 44 (1st Cir. 2010) (applying rational basis test); *Williams v. Meyer*, 346 F.3d 607, 616 (6th Cir. 2003) (applying strict scrutiny); *Francis S. v. Stone*, 221 F.3d 100, 111 (2nd Cir. 2000) (applying an intermediate level of scrutiny). The diversity between the circuits shows the lack of clear Supreme Court authority on the issue. When there is no clearly established Supreme

- 6 -

Court law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

Consequently, Tran does not show the Wisconsin Court of Appeals unreasonably applied clearly established federal law as determined by the Supreme Court when it applied the rational basis test and presumed the constitutionality of Chapter 980.

### 2. Equal Protection Claim: Less Restrictive Treatment

Tran argues his equal protection rights were violated because Chapter 980 does not consider a less restrictive form of treatment, unlike Wisconsin Chapter 51, which addresses involuntary commitments. (Petitioner's Br. at 15.) Tran further argues Chapter 980 imposes a more stringent standard of release than those committed under other Wisconsin statutes. (*Id.* at 18-20.) The court of appeals rejected these arguments, stating the Wisconsin Supreme Court has already determined that the State has a compelling interest in protecting the public from dangerous mentally disordered persons and that its statutorily distinctive mechanisms in Chapter 980 do not violate equal protection, citing *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (Wis. 1995). The court of appeals also found, citing *In re Commitment of Rachel*, 2002 WI 81, ¶¶ 61-68, 254 Wis. 2d 215, 647 N.W.2d 762, that "although a respondent's ability to seek supervised release as an alternative to institutional commitment may be limited, ch. 980 is narrowly tailored and does not violate substantive due process." (Answer, Ex. H at 10.)

Tran presents no clearly established federal law as determined by the United States Supreme Court in support of his argument that the Constitution requires an alternative to confinement. As stated above, when there is no clearly established Supreme Court law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue. *Carey*, 549 U.S. at 77. Tran has

- 7 -

failed to show the court of appeals' decision violates clearly established federal law. Tran is not entitled to habeas relief on this ground.

### 3. *Fifth Amendment, Sixth Amendment, and Ex Post Facto Claims*

Tran argues violations of his Fifth and Sixth Amendment rights and a violation of the *ex post facto* Clause. Specifically, he argues his Fifth Amendment rights were violated because statements he made to mental health professionals and the "neutral investigator" were used against him to commit him in violation of his right against self-incrimination and because Chapter 980 violates the Double Jeopardy Clause. Tran further argues he was denied his right to confront witnesses, to present a defense, and his right to a speedy trial, in violation of the Sixth Amendment. Finally, Tran argues Chapter 980 violates the *ex post facto* Clause.

Tran's claims are only cognizable in criminal proceedings. The Supreme Court has held that civil commitment proceedings for sexually dangerous persons are not criminal. *See, e.g.*, *Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings and that involuntary confinement pursuant to the Kansas statute was not punitive); *Allen v. Illinois*, 478 U.S. 364, 374 (1986) (concluding that "proceedings under the [Illinois Sexually Dangerous Persons] Act are not 'criminal' within the meaning of the Fifth Amendment's guarantee against compulsory self-incrimination"). Moreover, the Supreme Court defers the categorization of a particular proceeding as civil or criminal to the legislature's stated intent. *Hendricks*, 521 U.S. at 361. And the legislature's stated intent is only rejected when the challenging party provides " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention.'" *Id.* (alteration in original) (quoting *United States v. Ward*, 448 U.S. 242, 248–49 (1980)).

- 8 -

In *In re Rachel*, 2002 WI 81, ¶ 41, the Wisconsin Supreme Court found that there was "little question that the legislature intended that ch. 980 be a civil commitment statute, passed for the purposes of control and treatment of the individual." In so finding, the Wisconsin Supreme Court stated that Chapter 980 "does not promote the traditional criminal goals of punishment, retribution, and deterrence." *Id.* ¶ 52. The *Rachel* court found that:

> Like the Kansas statute analyzed by the U.S. Supreme Court in *Hendricks*, the statute here seeks to confine persons with mental disorders that render those persons dangerous to the public . . . the intent behind the ch. 980 sanction, involuntary commitment, is easily assigned to a nonpunitive purpose. As we have repeatedly noted, the involuntary commitment is imposed both for the treatment of the individual and for the protection of the public.

*Id.* ¶¶ 52, 59.

Tran has not shown by the "clearest proof" that Chapter 980 is punitive in nature and I conclude that Chapter 980, like the Kansas statute in *Hendricks*, establishes a civil proceeding. Because Chapter 980 is a civil proceeding, these challenges must be rejected.

### 4.    Separation of Church and State Claim

Tran argues Chapter 980 violates the First Amendment because the actuarial instrument used by psychologist Dr. Anthony Jurek to determine Tran's likelihood of reoffense is grounded in Christian beliefs. Tran notes that the instrument distinguishes between victims who are male and victims who are female and finds that people who victimize males are more likely to reoffend than those who victimize females. (Petitioner's Br. at 20-21.) Tran argues this penalizes more harshly those who engage in sexual behavior that is not intended for procreation, which he argues stems from Christian beliefs. (*Id.*) The court of appeals rejected this argument, noting that while the First Amendment protects freedom of religious belief, the freedom to act on the basis of religious beliefs is subject to government regulation, citing *State v. Horn*, 126 Wis. 2d 447, 454, 377 N.W.2d 176 (Ct.

- 9 -

App. 1985), which cites the Supreme Court in *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). (Answer, Ex. H at 11.) The court of appeals further held that Tran was not found sexually disordered for having non-procreational sex or for being homosexual, rather, for sexually victimizing very young children. (*Id.*)

While the court of appeals framed Tran's First Amendment argument as a claim of freedom of religious beliefs or freedom to act on the basis of one's beliefs, it seems Tran is rather challenging the science underlying the actuarial instrument used by the State. He contends the science is improperly grounded in religious beliefs. Regardless, the result is the same because Tran has not shown the court of appeals' holding violates the First Amendment or any federal law as established by the Supreme Court.

Furthermore, Tran's misstates the record in his briefs. Tran contends in his principal brief that Dr. Jurek testified that if Tran had molested young girls instead of young boys, the actuarial instrument would show his level of dangerousness would be lower and he might not meet the criteria for commitment. (Petitioner's Br. at 21.) In his reply, Tran goes even further and states Dr. Jurek testified that if Tran's victims were female, his actuarial score would have been zero and commitment would have been nearly impossible. (Petitioner's Reply Br. at 9-10, Docket # 14.)

This does not accurately reflect Dr. Jurek's testimony. While Dr. Jurek testified that if a person had no male victims his score would drop, indicating he would have a lower rate of reoffense, Dr. Jurek did not testify that the hypothetical individual might not meet the criteria for commitment. (Answer, Ex. N at 68-71, Docket # 8-15.) Further, Dr. Jurek did not testify that Tran's overall actuarial score would have been zero and commitment nearly impossible if Tran had only female victims; rather, Dr. Jurek testified that Tran's score of four under the actuarial instrument used would

- 10 -

drop to a three because he would receive no points for the category of sex of the victim. (*Id.* at 70-71.) Thus, Tran is not entitled to habeas relief on this ground.

### 5. *Evidentiary Challenges*

Tran also makes several arguments challenging evidentiary issues. Tran argues the trial court improperly allowed the testimony of psychologists Linda Nauth and Anthony Jurek; Kimberly Roberts, a social worker at the Wisconsin Resource Center ("WRC"); Attorney Margaret Borkin, the assistant district attorney who prosecuted Tran's juvenile sexual assaults; and Racine County Sheriff's Department Investigator Lieutenant John Gordon. (Habeas Petition at 3; Petitioner's Br. at 6-7; Answer, Ex. H at 12.) Tran further argues the trial court improperly admitted "prejudicial hearsay" through the "State's expert testimonies which consisted of hearsays Statements [sic] made from the victim's mother, prison officials, criminal investigators, PSI writer's conclusion and other opinions proffered by unrelated psychiatric reports." (Petitioner's Br. at 9.)

Finally, Tran argues he had a right to a "neutral mental health examiner" and challenges the admission of Dr. Jurek as the State's expert witness. (Petitioner's Br. at 8; Petitioner's Reply Br. at 9.)

The state court's decision on these issues involves the admissibility of evidence. A state court's evidentiary ruling, because it is a matter of state law, will rarely serve as a proper basis for granting a writ for habeas corpus. *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). Unless the petitioner demonstrates that "a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial." *Id.* (internal quotation and citation omitted).

- 11 -

Tran has not shown that these evidentiary rulings denied him a fundamentally fair trial and thus he is not entitled to habeas relief on this ground.

### 6. Due Process Claims

Tran raises several claims that I construe as due process claims. I will address each argument in turn.

#### 6.1 Notice of Hearing

Tran argues the State denied him due process because it did not provide sufficient notice of the petition in order for him to adequately prepare for his probable cause hearing. At the time of Tran's probable cause hearing, Wis. Stat. 980.04(2) (2003-04) required the trial court to hold a hearing to determine whether there was probable cause to believe the person named in the petition was a sexually violent person. The hearing was to take place within 72 hours (excluding Saturdays and Sundays) after the petition was filed. Tran's petition was filed on November 19, 2004. (Answer, Ex. N at 76.) On November 24, 2004, a probable cause hearing was scheduled. At this hearing, Tran's counsel requested the probable cause hearing be adjourned and informed the court that "[w]e did inform the A.G.'s Office of this request prior to today's date." (Resp. Br., Ex. O at 2, Docket # 13-2.) Tran's counsel further stated that she and her co-counsel were "just appointed the case basically yesterday" and had "not had a chance to meet with Mr. Tran in order to discuss this matter with him." (*Id.*) The trial court conducted a colloquy with Tran in which Tran agreed that he was waiving his right to have a probable cause hearing within 72 hours. (*Id.* at 2-3.) Tran's probable cause hearing was held on December 3, 2004. (Resp. Br., Ex. P, Docket 13-3.)

Tran argues that he did not receive notice of the probable cause hearing, that he was not served with notice of the petition, and that his counsel was not aware of the existence of the petition

- 12 -

at the time of the probable cause hearing. (Petitioner's Br. at 5.) The court of appeals found that

Tran's attorneys were given an adjournment on November 24 to afford them sufficient time to

prepare, and Tran expressly and voluntarily waived the statutory time frame. (Answer, Ex. H at 5.)

Tran relies principally on *Lessard v. Schmitdt*, 349 F. Supp. 1078 (1972), *vacated*, 94 S. Ct. 719

(1974), *remanded to* 379 F. Supp. 1376 (E.D. Wis. 1974), for the proposition that he is constitutionally

required to receive notice prior to the "preliminary inquiry for the emergency detention" that

includes "the nature of grounds, reasons and necessity for the emergency detention, in addition to

notice of the time and location of the hearing." (Petitioner's Br. at 5.) Tran further states, based on

*Lessard*, that this notice must "inform the subject of his right to counsel." (*Id.*) But *Lessard* does not

involve the interpretation of Wisconsin Chapter 980.

A case more on point is *Flowers v. Leean*, No. 99-2999, 2000 WL 554518, *1 (7th Cir. May 3,

2000) (unpublished). In *Flowers*, the petitioner, like Tran, was confined pursuant to Wisconsin

Chapter 980. Citing *Lessard*, he argued that he was not served with a copy of the Chapter 980 petition

within a reasonable time in advance of the probable cause hearing and as a result his counsel was not

adequately prepared to represent him. *Id.* at *2. The court of appeals stated:

> [W]e fail to see how the *Lessard* injunction is enforceable against the defendants in this case, as it derived from a class action suit in which the class was defined to include any person held pursuant to ch. 51, Wisconsin's involuntary civil commitment statute for persons alleged to be suffering from mental illness. *Lessard*, 379 F.Supp. at 1378. [Petitioner] is confined pursuant to ch. 980, applicable exclusively to convicted sex offenders. Chapter 980 became effective almost twenty years later in 1994 and affords a respondent even greater protections than ch. 51, such as the requirement that a twelve-person jury unanimously find "beyond a reasonable doubt" that an individual is a "sexually violent person."

*Id.*

Further, a review of Wisconsin Chapter 980 does not show the state is required to provide the

subject of the petition a copy of the petition prior to the probable cause hearing. Rather, Wis. Stat.

- 13 -

§ 980.03(1) (2003-04) provides that the court "shall give the person who is the subject of the petition reasonable notice of the time and place of each such hearing." Tran does not show he did not receive notice of the probable cause hearing. Both he and his counsel were present at the November 24, 2004 probable cause hearing at which time his counsel asked for an adjournment. Tran specifically waived his right to have the probable cause hearing within 72 hours. When the probable cause hearing was held on December 3, 2004, once again, both Tran and his counsel were present. The fact both Tran and his counsel were physically present at both hearings belies the fact Tran failed to receive notice of the hearings, as required by the statute. Thus, Tran has not shown his right to due process was violated and is not entitled to habeas relief on this claim.

### 6.2    Recent Overt Act

Tran argues Chapter 980 is unconstitutional because it lacks a requirement that the State prove the person subject to the petition "has actually been dangerous in the recent past and that such danger was manifested by an [sic] 'recent overt act.'" (Petitioner's Br. at 10.) In addressing this claim, the court of appeals stated that:

> A petition alleging that a person is sexually violent must allege that the person is dangerous. Wis. Stat. § 980.02(2)(c). Tran asserts that "dangerousness" implies the need to allege a recent overt act and that due process requires it. . . the State need not establish a recent overt act to demonstrate probable cause of dangerousness of an offender incarcerated when the petition is filed.

(Answer, Ex. H at 6.)

The court of appeals relied on *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995) in rejecting Tran's claim. The Wisconsin Supreme Court also rejected the proposition that due process requires a recent overt act in *In re Commitment of Bush*, 2005 WI 103, ¶ 29, 283 Wis.2d 90, 699 N.W.2d 80.

Tran does not cite, and this Court has not found, any United States Supreme Court precedent that could be read to hold that due process requires the finding of a recent overt act in order for an

- 14 -

individual to be civilly committed as a sexually violent person within the meaning of a state statute such as Chapter 980. When there is no clearly established Supreme Court law on an issue, a state court cannot be said to have unreasonably applied the law as to that issue. *Carey*, 549 U.S. at 77. Tran is not entitled to habeas corpus relief on this claim.

### 6.3 Volitional Control

Citing *Kansas v. Crane*, 534 U.S. 407 (2002), Tran argues Chapter 980 violates due process because it does not require a jury to find that he has serious difficulty controlling his behavior. (Petitioner's Br. at 11.) The court of appeals rejected this argument. (Answer, Ex. H at 7.) While there must be a nexus between the mental disorder and dangerousness, the court of appeals held that proof of the nexus necessarily and implicitly involves proof that the mental disorder involves serious difficulty for self-control. (*Id.*) The court of appeals relied on *In re Commitment of Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784. In *In re Laxton*, the Wisconsin Supreme Court specifically considered and relied on *Crane* in finding that a civil commitment does not require a separate finding that the individual's mental disorder involves serious difficulty for such person to control his or her behavior. 2002 WI 82, ¶ 2.

The defendant in *In re Laxton* filed a writ of habeas corpus specifically arguing that the Wisconsin Supreme Court decision was contrary to or an unreasonable application of clearly established federal law. The Seventh Circuit upheld the district court's denial of the writ. First, contrary to Tran's assertion, the Seventh Circuit specifically held that "the Wisconsin Supreme Court's adjudication was not 'contrary to' Supreme Court precedent" because the Wisconsin Supreme Court identified and summarized the Supreme Court's holding in *Crane*. *Laxton v. Bartow*, 421 F.3d 565, 571 (7th Cir. 2005).

- 15 -

The Seventh Circuit then turned to the "unreasonable application" prong and found that "[w]e cannot say that the Wisconsin Supreme Court's adjudication of petitioner's due process claim was an objectively unreasonable application of Supreme Court precedent." *Id.* The Seventh Circuit continued:

> In light of the Supreme Court's decision in *Crane* to vacate the judgment of the Kansas Supreme Court, the absence of more precise language concerning a lack-of-control element, and the Court's own acknowledgment that bright-line rules are inappropriate in this context, we cannot agree with petitioner's contention that *Crane* clearly establishes that the jury must be instructed and specifically find that petitioner has serious difficulty in controlling his behavior. It was not objectively unreasonable for the Wisconsin Supreme Court to conclude that the finding of serious difficulty in controlling behavior was implicit in the jury's conclusion that Laxton met the statutory definition of a sexually violent person.

*Id.* at 572. Thus, Tran is not entitled to habeas relief on this ground.

### 7. *Jury Instructions*

Tran argues Wis JI - Criminal 2502 creates mandatory presumptions on each of the elements the State has to prove. (Petitioner's Br. at 12.) At the time of Tran's trial, Wis JI - Criminal 2502 required proof that Tran (1) has been convicted of a sexually violent offense; (2) was within 90 days of release when the commitment petition was filed; (3) currently has a mental disorder; and (4) is dangerous to others because he has a mental disorder which makes it more likely than not that he will engage in one or more future acts of sexual violence. Wis. Stat. § 980.02(2) (2003-04); (Answer, Ex. H at 7 and 9.)

The court of appeals stated that a mandatory presumption is unconstitutional because it relieves the State of its burden to prove every element beyond a reasonable doubt, citing *State v. Gardner*, 2006 WI App 92, ¶ 10, 292 Wis. 2d 682, 715 N.W.2d 720. (Answer, Ex. H at 8.) *Gardner*, in turn, cites *Sandstrom v. Montana*, 442 U.S. 510 (1979). *Id.* The Supreme Court in *Sandstrom* stated

- 16 -

that the "threshold inquiry" in "ascertaining the constitutional analysis" is to "determine the nature of the presumption it describes . . . [t]hat determination requires careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." 442 U.S. at 514.

### 7.1 Conviction Element

As to the first element, the State must prove Tran was convicted of a sexually violent offense. Tran was convicted of first degree sexual assault of a child. (Answer, Ex. H at 2.) Wis. Stat. § 980.01(6)(a) (2003-04) defines "[s]exually violent offense" to include first degree sexual assault of a child in violation of Wis. Stat. § 948.02(1). While Tran acknowledges that the legislature has defined "sexually violent offense" to include certain enumerated offenses, he argues that by enumerating certain offenses as "sexually violent," it precludes him from arguing that his offense was not "violent" and "directs the finder facts [sic] to automatically presumed [sic] guilt based upon legislative mandate" in violation of *Sandstrom*. (Petitioner's Br. at 12.)

The court of appeals rejected Tran's argument, stating that the issue is not whether Tran's conduct that lead to the conviction of first degree sexual assault of a child was "violent" conduct; rather, the element that must be proven is the fact of the conviction. (Answer, Ex. H at 8.) The court of appeals' finding is consistent with *Sandstrom*.

In Tran's case, the jury was charged with deciding whether Tran had the requisite prior conviction. While the trial court instructed the jury that first degree sexual assault of a child was a "sexually violent offense" under the statute, this was not improper because the jury still had to decide whether Tran had in fact been convicted of a sexually violent offense. The trial court did not instruct the jury that Tran had been convicted of this offense or that he was presumed to have been convicted

- 17 -

of this offense, rather the trial court instructed the jury that the state must "have proved by evidence which satisfies you beyond a reasonable doubt" that Tran "has been convicted of a sexually violent offense" to satisfy the first element. (Answer, Ex. N at 204.)

The trial court clearly instructed the jury that their duty was to decide whether Tran had been convicted of a sexually violent offense. A reasonable jury would not have interpreted that instruction as a presumption that Tran had been convicted of the offense. The trial court's instruction and the court of appeals' holding do not violate *Sandstrom*.

### 7.2 Within 90 Days of Release Element

The State must also prove Tran was within 90 days of release when the commitment petition was filed. Wis. Stat. § 980.02(2)(ag) (2003-04). Tran contends that he was not allowed to argue to the jury that he was never "released" but was merely transferred from one prison to another when he went from the Oshkosh Correctional Institution to the WRC. (Petitioner's Br. at 12.) The court of appeals rejected this argument, finding that the State filed the petition for commitment ten days before the end of Tran's sentence imposed for a conviction for a sexually violent offense and that after the probable cause hearing, he was released and transferred to the WRC as a Department of Health and Family Services patient, not a DOC prisoner. (Answer, Ex. H at 9.)

The trial court instructed the jury that it must find whether, at the time the petition was filed, Tran was within 90 days of release from a sentence which was imposed upon conviction of a sexually violent crime. (Answer, Ex. N at 204.) There is nothing in this language to suggest a mandatory presumption in violation of *Sandstrom*. The jury was instructed to decide whether the State presented sufficient evidence to convince the jurors beyond a reasonable doubt whether Tran was within 90 days of release when the petition was filed. There was no language to suggest Tran was presumed

- 18 -

to be within 90 days of release. This instruction, and the court of appeals' finding, does not violate *Sandstrom*.

### 7.3    Mental Disorder Element

As to the mental disorder element, Tran argues the trial court "directed the jury to presume his has [sic] mental disorder based on past conviction of a sex offense." (Petitioner's Reply at 8.) The court of appeals rejected this argument, stating that the jury was instructed that it had to find that he has a mental disorder and was expressly informed that "[n]ot all persons who commit sexually violent offenses can be diagnosed as suffering from a mental disorder." (Answer, Ex. H at 8; Ex. N at 205.) Neither the instruction on this element nor the court of appeals' finding upholding the instruction violate *Sandstrom*. A reasonable juror would not have interpreted the instruction as creating a mandatory presumption. As the court of appeals found, the trial court explicitly told the jury they must find Tran has a mental disorder and stated that not all persons who commit a sexually violent offense will have a mental disorder. Tran is not entitled to habeas relief on this ground.

### 7.4    Dangerousness Element

Finally, the State must prove Tran was dangerous because his mental disorder makes it likely that he will engage in acts of sexual violence. Tran argues the trial court erroneously instructed the jury to find him dangerous based on his past conviction. (Petitioner's Br. at 13; Petitioner's Reply Br. at 8.) Before the court of appeals, Tran also argued that "a conviction of criminal offense alone is the entire basis of element one, two, three and four under Wisconsin Sexually Violence [sic] Person Act"; however, he further argued that his predicted dangerousness derived solely from actuarial instruments and the instruments were based solely on his criminal record. (Answer, Ex. B at 22-23.)

In rejecting this argument, the court of appeals focused on the expert testimony argument and found that the jury was free to accept or reject any or all of the evidence predictive of Tran's

- 19 -

dangerousness, including Dr. Jurek's testimony regarding the actuarial scores. (Answer, Ex. H at 8-9.) The trial court's instruction does not create a mandatory presumption. The trial court instructed the jury that the State must present sufficient evidence to convince the jurors beyond a reasonable doubt that Tran is dangerous to others because he has a mental disorder which makes it more likely than not that he will engage in future acts of sexual violence. The judge explained the definition of "sexual violence" and "sexual contact." (Answer, Ex. N at 205-06.) The trial court's instruction would not be interpreted by a reasonable juror as creating a mandatory presumption. Thus, Tran has not shown that the instruction on this element violates *Sandstrom*.

In summary, Tran has not shown the state court's finding that Wis JI - Criminal 2502 does not create mandatory presumptions is contrary to the Supreme Court's decision in *Sandstrom*. He is not entitled to habeas relief on this ground.

### 8. *Vagueness and Overly Broad Claims*

Tran argues the statutory terms "mental disorder" in Wis. Stat. § 980.01(2) (2003-04) and "likely" in Wis. Stat. § 980.01(1m) (2003-04) are unconstitutionally vague and overly broad. (Petitioner's Br. at 15.) Tran also argues Wisconsin's statutory standard for dangerousness is unconstitutionally vague. (Petitioner's Br. at 11.) The court of appeals rejected Tran's arguments regarding "mental disorder" and "likely," finding the arguments have previously been scrutinized and rejected by the Wisconsin courts in *Post*, 197 Wis. 2d at 303-07 ("mental disorder") and *In re Commitment of Nelson*, 2007 WI App 2, ¶ 18, 298 Wis. 2d 453, 727 N.W.2d 364 ("likely"). (Answer, Ex. H at 11.)

The court of appeals also rejected Tran's argument regarding dangerousness, first finding the court of appeals already rejected a substantive due process challenge to the definition of

- 20 -

dangerousness, citing *In re Nelson* (Answer, Ex. H at 6), and second finding the legislature's determination not to enumerate particular sexually violent acts does not render the statute unconstitutionally infirm. (*Id.* at 7.)

8.1    The Definition of "Mental Disorder"

Wis. Stat. § 980.01(2) (2003-04) defines "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." The *Post* court stated that a statute must be drawn narrowly enough that its terms can be given a reasonably precise content and those persons it encompasses can be identified with reasonable accuracy, citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). The Wisconsin Supreme Court further found that the use of the term "mental disorder" in Chapter 980 and its definition fulfill the requirements of *O'Connor*. *Post*, 197 Wis. 2d at 303-04, 541 N.W.2d at 122-23.

The *Post* court also stated that "mental illness" is not required by either the federal or state constitution and the Supreme Court has declined to enunciate a single definition that must be used as the mental condition sufficient for involuntary mental commitments. *Id.* at 304, 541 N.W.2d at 123. Rather, the "Court has wisely left the job of creating statutory definitions to the legislators who draft state laws. Noting that the substantive as well as procedural mechanisms for civil commitment vary from state to state, the Court declared that '[t]he essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold.'" *Id.* (quoting *Addington*, 441 U.S. at 431.)

The *Post* court noted the Supreme Court has used numerous terms to describe the mental condition of those properly subject to civil commitment. *Id.* The supreme court continues:

The key to the constitutionality of the definition of mental disorder in chapter 980 is that it requires a nexus--persons will not fall within chapter 980's reach unless they are

- 21 -

diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence. Not all persons who commit sexually violent crimes can be diagnosed as suffering from mental disorders, nor are all persons with a mental disorder predisposed to commit sexually violent offenses . . . the focal point of commitment is not on past acts but on current diagnosis of a present disorder suffered by an individual that specifically causes that person to be prone to commit sexually violent acts in the future. The statute, as drafted, does not sweep too broadly; rather, it is narrowly tailored to allow commitment only of the most dangerous of sexual offenders--those whose mental condition predisposes them to reoffend.

*Id.* at 306-07, 541 N.W.2d at 124.

The Wisconsin Supreme Court's decision in *Post* carefully considers Supreme Court precedent in finding "mental disorder" is not overly broad. Tran has not shown the court of appeals' analysis in relying on *Post* is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

       8.2    The Definition of "Likely"

Wis. Stat. § 980.01(1m)(2003-04) defines "likely" as "more likely than not." In *In re Nelson*, the court of appeals held: "[W]e discern no reason why the 'more likely than not' standard is not sufficiently narrowly tailored to achieve the State's compelling interest in protecting society by preventing acts of sexual violence through the commitment and treatment of those identified as most prone to commit such acts." 2007 WI App 2, ¶ 18. In so holding, the court of appeals examined the United States Supreme Court's decision in *Kansas v. Hendricks* and *Kansas v. Crane*. The court of appeals considered that in *Hendricks*, the Supreme Court upheld the Kansas sexually violent persons law in the face of a substantive due process challenge finding that the Kansas law "'requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a *likelihood* of such conduct in the future if the person is not incapacitated.'" *In re Nelson*, 2007 WI App 2, ¶ 11 (quoting *Hendricks*, 521 U.S. at 357,

- 22 -

117 S.Ct. 2072) (emphasis in original). Accordingly, the court of appeals found that *Hendricks* "is consistent with the proposition that the 'likely' standard is sufficient to satisfy substantive due process requirements." *Id.*

Considering *Crane*, the Wisconsin Court of Appeals found that "the key to the constitutionality of chapter 980, at least for purposes of substantive due process, is that there exists a sufficient link between the person's mental disorder and the person's level of dangerousness, and that this link is sufficient to distinguish the person from the 'dangerous but typical recidivist.'" *Id.* ¶ 14. The court of appeals stated that under the "more likely than not" standard, there must be a strong nexus between the person's mental disorder and that persons level of dangerousness. *Id.* ¶ 15.

Tran has not shown the court of appeals' analysis is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. In fact, the court of appeals carefully examined the Supreme Court precedent on the issue and found that the legislature's definition of "likely" as "more likely than not" is consistent with Supreme Court law. Tran has not demonstrated this finding is incorrect.

### 8.3 Standard of Dangerousness

Tran argues the statutory standard of "dangerousness" is unconstitutionally vague, specifically because the statutory scheme:

> [P]ermits prediction of dangerousness without a determination [sic] what type of conduct in which the individual may engage in, the likelihood or probability that the individual will in fact indulge in that conduct, the effect of such conduct if engaged in will have on others. The statute also does not require the prosecution to prove the ultimate dangerous [sic] of certain forms of behavior may vary with the frequency with which they can be expected.

(Petitioner's Br. at 11.)

- 23 -

As explained above, the court of appeals in *In re Nelson* properly considered Supreme Court precedent in determining the level of dangerousness required to commit a person under Chapter 980. 2007 WI App 2, ¶¶ 9-18. Thus, Tran has not shown the "standard of dangerousness" under Chapter 980 is unconstitutionally vague.

Further, Tran has not shown the court of appeals' rejection of Tran's argument that Chapter 980 offends due process because it permits a prediction of dangerousness without requiring a finding of a specific type of conduct the person will engage in or the likelihood that he or she will engage in it is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Rather, the court of appeals cites *Post* for the proposition that particular deference is accorded to reasonable legislative judgments in the mental health arena. (Answer, Ex. H at 7.) The *Post* court cites the United States Supreme Court's decision in *Jones v. United States*, 463 U.S. 354, 364 n.13 (1983) (finding courts should pay particular deference to reasonable legislative judgments) in support of this proposition. Therefore, Tran has not shown the court of appeals' decision that the standard of dangerousness is not unconstitutionally vague was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

**9.      *Substantive Due Process Claims***

Tran makes a host of arguments that his commitment violated substantive due process. Of the arguments made, only Tran's arguments that he never met the threshold or criteria for commitment and that the use of his no contest plea in the underlying criminal action violated collateral estoppel

- 24 -

are new arguments. The rest of the arguments are repetitive of arguments previously made and have been addressed earlier in this opinion.[2]

### 9.1    Sufficiency of the Evidence

Tran argues Wis. Stat. § 980.02(2) (2003-04) requires a standard of "more likely than not" to commit someone under the statute, which Tran states means the likelihood that someone will engage in an act of sexual violence must be more than 50%. (Petitioner's Br. at 22.) Tran argues the evidence did not show the likelihood he would engage in an act of sexual violence exceeded 50%. (*Id.* at 23.) Specifically, Tran argues Dr. Jurek testified based on certain actuarial instruments that Tran's rate of reconviction was anywhere from 16% to 48.6% and thus does not exceed 50%. (*Id.* at 22-23.)

To the extent Tran's argument can be construed as challenging the sufficiency of the evidence to support Tran's commitment, this argument fails. When insufficiency of evidence is asserted as the basis for a habeas petition, the petitioner must show "'upon the record evidence adduced at the trial no rational trier fact could have found proof beyond a reasonable doubt.'" *Cabrera v Hinsley*, 324 F.3d 527, 533 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). The inquiry does not require the federal habeas court to "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282 (1966)). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

---

[2]    The alleged use of hearsay statements was addressed in Section 5, the Confrontation Clause argument in Section 3, the mandatory presumption argument in Section 7, and the improper standard of dangerousness and mental disorder in Section 8.

In this case, in considering whether the evidence was sufficient to support the verdict, the Wisconsin Court of Appeals used a standard consistent with *Jackson*. While the court of appeals did not cite to *Jackson*, it cited to *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990) which pronounces a state law standard that is the functional equivalent to *Jackson*:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it. (internal citation omitted).

Thus, the court of appeals identified the correct governing legal rule. The only issue before this Court to resolve on habeas review is whether the state court unreasonably applied that rule to the facts of Tran's case. In making that determination, it is important to recall that in a habeas corpus proceeding, the court's review is tempered by AEDPA's deferential constraints. Tran must show the state court's judgment either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

The court of appeals considered the fact the State introduced Tran's 1992 judgment of conviction for first degree sexual assault of a child, a sexually violent offense under Wis. Stat. § 980.01(6)(2003-04), and the fact the State established the discharge petition was filed ten days before Tran's mandatory release date. (Answer, Ex. H at 4.) The court of appeals further considered the fact the State presented evidence through the testimony of two of Tran's victims, now adults, of the nature of the assaults; evidence through the testimony of a police officer who investigated some of

- 26 -

the assaults and an attorney who prosecuted his juvenile case that Tran admitted to molesting several boys and was "grooming" two other boys; and evidence from two psychologists who testified regarding their evaluations of Tran's condition. (*Id.*)

Considering the evidence presented, the court of appeals held that the evidence adduced at trial was sufficient to permit a reasonable jury to find to the requisite degree of certainty that Tran was a sexually violent person.

Tran has not demonstrated the court of appeals' finding that the evidence was sufficient to support his commitment was either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. Rather, the law as applied by the court of appeals was consistent with the Supreme Court's decision in *Jackson*. Thus, Tran is not entitled to habeas relief on this ground.

9.2    Collateral Estoppel

Tran also argues the State impermissibly used his no contest plea in the subsequent civil commitment proceeding in violation of Wis. Stat. § 904.10 ("Evidence of . . . a plea of no contest . . . is not admissible in any civil or criminal proceeding against the person who made the plea . . .") and the doctrine of collateral estoppel. (Petitioner's Br. at 24.) The court of appeals rejected this argument, finding that a criminal judgment can be used to prove "the fact of conviction" but not the truth of the allegations; thus, the judgment of conviction was properly admissible to prove Tran's conviction. (Answer, Ex. H at 12.)

The admissibility of Tran's judgment of conviction is an evidentiary ruling. As stated earlier, a state court's evidentiary ruling, because it is a matter of state law, will rarely serve as a proper basis for granting a writ for habeas corpus. *Haas*, 910 F.2d at 389. Unless the petitioner demonstrates that

- 27 -

"a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's due process rights by denying him a fundamentally fair trial." *Id.* (internal quotation and citation omitted).

Tran has not argued the state court's evidentiary ruling denied him a fundamentally fair trial and this Court does not see how the trial court's admission of the fact of Tran's prior conviction violated federal law.

### 10. *Discharge Proceedings*

In August 2008, Tran filed a *pro se* petition for discharge and a motion to have healthcare examiners of his choice appointed for the re-examination. (Answer, Ex. H at 16-17.) Tran clarifies that in this petition for a writ of habeas corpus, he is challenging only his first discharge proceedings, from 2008. (Petitioner's Br. at 28.) Tran challenges the constitutionality generally of Chapter 980's discharge proceedings and the proceedings as applied to him in his initial discharge proceeding. (*Id.*) Tran challenges the discharge proceedings in the following ways: (1) Tran was erroneously denied a discharge hearing; (2) Wisconsin's discharge procedure fails to provide adequate minimal procedural and substantive due process protections; (3) Tran is required to be on a bracelet and pay state supervision fee for the rest of his life, which constitutes double jeopardy and an illegal seizure; (4) Tran is being deprived of treatment and the conditions of confinement are inhumane in violation of due process and his right to be free from cruel and unusual punishment. (Petitioner's Br. at 31.)

The respondent has argued Tran procedurally defaulted the constitutional claims regarding his discharge petition. (Resp. Br. at 27-29.) As stated above, a habeas petitioner must exhaust his state court remedies before seeking relief in habeas corpus by fairly presenting his federal claims to the state courts. *Lewis*, 390 F.3d at 1025. This involves invoking one complete round of the normal

- 28 -

appellate process, including seeking discretionary review before the state supreme court. *McAtee*, 250 F.3d at 508-09.

It is unclear from Tran's habeas petition and supporting brief what constitutional claim he is alleging in conjunction with his claim that the trial court erroneously denied him a discharge hearing. Furthermore, Tran did not present to the court of appeals any case law indicating the controlling legal principle on which he was relying to support his constitutional violation. (Answer, Ex. E at 10-11, Docket # 8-6); *see Verdin*, 972 F.2d at 1474 (finding that for a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court). Thus, to the extent Tran has a constitutional claim on this issue, it appears he procedurally defaulted this claim by failing to properly present it to the court of appeals.

Finally, Tran challenges the constitutionality of Wisconsin's discharge proceedings. Tran raised these issues in his brief to the court of appeals, (Answer, Ex. E at 12-24); however, the court of appeals declined to address the constitutional issues because Tran failed to raise the issues in the trial court. (Answer, Ex. H at 21.) The court of appeals relied on *State v. McCoy*, 143 Wis. 2d 274, 284-85, 421 N.W.2d 107 (1988) in so holding, which states that consideration of constitutional issues raised for the first time on appeal is discretionary with the court and the court has consistently held that it will not entertain constitutional issues raised for the first time on appeal unless there are compelling reasons for doing so.

A federal court will not review a question of federal law decided by a state court if the state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002). However, this doctrine does not apply unless the state court actually relied on the procedural default as an

independent basis for its decision. *Id.* Thus, if the state court decision appears to rest primarily on a merits determination of the petitioner's claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, there is no independent and adequate state ground. *Id.*

The court of appeals did not address the merits of Tran's constitutional claims as related to his discharge proceedings and clearly stated that it was relying on the fact Tran failed to raise the constitutional issues in the trial court as the basis of its holding. Thus, Tran procedurally defaulted these claims.

It appears Tran has also procedurally defaulted his claims regarding the bracelet and state supervision fee constituting double jeopardy and an illegal seizure and his cruel and unusual punishment claim. Neither of these claims were raised in his brief before the court of appeals. (Answer, Ex. E, Docket # 8-6.) Thus, Tran has failed to invoke one complete round of the normal appellate process. *McAtee*, 250 F.3d at 508-09.

A petitioner can avoid procedural default by showing cause and prejudice or the potential for a miscarriage of justice. *Kaczmarek v. Rednour*, 627 F.3d 586, 593 (7th Cir. 2010). Tran has not demonstrated this, and the Court finds no basis upon which Tran can avoid the procedural default on these issues. Tran's claim for habeas relief on this ground fails.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a

constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n. 4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Regarding the issues decided on the merits (Sections 1-9), Tran cannot demonstrate that reasonable jurists would find this Court's assessment of Tran's claims debatable or wrong. Thus, the Court will deny a certificate of appealability as to those issues. Regarding Tran's discharge petition claim (Section 10), which the Court rejected on procedural grounds, jurists of reason would not find it debatable that Tran procedurally default this claim.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion to supplement the record (Docket # 9) is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

- 31 -

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of March, 2013.

<div style="margin-left: 50%">

BY THE COURT

_s/Nancy Joseph_
NANCY JOSEPH
United States Magistrate Judge

</div>